# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Jan Sheinfeld, | Case No. 2:18-cv-02083-JAD-EJY |
| Plaintiff | |
| v. | **Order Granting Motions to Compel Arbitration and Staying Case Pending Arbitration** |
| BMW Financial Services NA, LLC; et al., | |
| Defendants | [ECF Nos. 4, 5] |

In this warranty action, Jan Sheinfeld alleges that his leased 2017 BMW 5-series vehicle's ongoing mechanical problems make the vehicle unsafe to drive and less valuable. Defendants BMW Financial Services, NA, LLC; BMW of North America, LLC; and JRJ Investments, Inc., d/b/a BMW of Las Vegas move compel arbitration based on the clause in Sheinfeld's lease agreement that allows them to elect to arbitrate any dispute arising from the lease or condition of the vehicle.[1] Sheinfeld resists arbitration, arguing that his claims—state and federal alike—all fall under the Magnuson-Moss Warranty Act and are subject to its prescribed claim-resolution procedures instead of the lease's arbitration clause and the Federal Arbitration Act.[2] I find that the Magnuson-Moss Warranty Act does not preclude the enforcement of Sheinfeld's arbitration agreement and that all of Sheinfeld's claims are arbitrable. So I grant the motion to compel and stay this case pending arbitration.

---

[1] ECF No. 4 (BMW Financial Services and BMW of North America's motion to compel arbitration); ECF No. 5 (BMW of Las Vegas's joinder).

[2] ECF No. 8 (Sheinfeld's opposition).

**Background**

In April 2017, Jan Sheinfeld signed a lease agreement for a new BMW-5 series with BMW of Las Vegas and BMW Financial Services as administrator of the agreement.[3] The lease contains an arbitration clause that allows any party to "choose to have any dispute between" them "decided by arbitration" governed by the Federal Arbitration Act (FAA).[4] Just three months into the lease term, Sheinfeld took the vehicle to "BMW of Henderson complaining that, among other things, the car would shake when braking and that the steering column was often noisy and squeaky."[5] That dealership confirmed that the vehicle would shake and "had faulty components in the steering column," and it attempted to fix the vehicle.[6] Sheinfeld returned the vehicle to BMW of Henderson five months later because the vehicle started shaking again.[7] The problems persisted into the next year. Sheinfeld took the vehicle to BMW of Las Vegas three times for repair work on the brakes and rotors.[8]

Sheinfeld notified BMW of Las Vegas and/or BMW Financial Services in writing of the issues and that the vehicle was unsafe to drive, but neither defendant remedied the issue.[9] Sheinfeld then submitted the matter to "FCA[10] for informal dispute resolution" with no success.[11]

---

[3] ECF No. 1-1 at ¶ 7.
[4] ECF No. 4-2 at 5, ¶ 41; 9 U.S.C. § 1, *et seq.*
[5] *Id*. at ¶ 12.
[6] *Id*. at ¶ 16–18.
[7] *Id*. at ¶ 18.
[8] *Id*. at ¶ 22–28.
[9] *Id*. at. ¶ 48.
[10] Sheinfeld does not explain what "FCA" refers to.
[11] *Id*. at ¶ 50.

On October 4, 2018, Sheinfeld filed this action in state court, asserting five state-law claims—for breach of contract, breach of the implied covenant of good faith and fair dealing, rescission of the purchase and refund of the purchase price under Nevada's lemon law, breach of implied and express warranties, and breach of the obligation of good faith—and one federal claim under the Magnuson-Moss Warranty Act (MMWA).[12] Defendants removed the action to federal court based on federal-question jurisdiction[13] and now move to compel arbitration under the lease agreement and the FAA.[14]

## Discussion

Defendants argue that all of Sheinfeld's claims are subject to the arbitration clause in his lease agreement and must therefore be arbitrated under the FAA.[15] Sheinfeld responds that all of his claims fall under the MMWA, so, at most, he can be compelled to participate in non-binding, informal dispute-settlement procedures before proceeding to litigation.[16] He reasons that the MMWA prohibits BMW from including a binding arbitration clause in his lease agreement, so this court should not enforce that clause. He argues alternatively that, even if an arbitration provision in the parties' contract documents could apply, it would be the more specific one in the BMW warranty instead of the more general one in the lease, and that the more-specific provision does not require him to arbitrate these claims.

---

[12] 15 U.S.C. § 2301, *et seq*.
[13] ECF No. 7.
[14] ECF Nos. 4, 5.
[15] ECF No. 4 at 5.
[16] ECF No. 8 at 3, 11.

3

**A.      The FAA and the MMWA**

To resolve the question of whether Sheinfeld can be compelled to arbitrate his claims, an understanding of these allegedly competing statutes is necessary. Congress enacted the FAA nearly 100 years ago "to 'reverse centuries of judicial hostility to arbitration agreements . . . by placing arbitration agreements 'upon the same footing as other contracts.'"[17] The FAA "establishes a federal policy favoring arbitration, requiring that [courts] rigorously enforce agreements to arbitrate"[18] and provides "'that where [a] contract contains an arbitration clause, there is a presumption of arbitrability.'"[19] "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"[20] The district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[21] In answering these questions, the court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."[22]

The MMWA was enacted 50 years after the FAA with the purpose of "improv[ing] the adequacy of information available to consumers, prevent[ing] deception, and improv[ing]

---

[17] *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 225–26 (1987) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510 (1974)) (internal citation and alteration marks omitted).

[18] *Id.* at 226 (internal quotation marks omitted).

[19] *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs, Inc v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

[20] *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir.2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)).

[21] *Id.*

[22] *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).

4

competition in the marketing of consumers."[23] "The MMWA 'allows a consumer to bring a suit where he claims to be damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the MMWA] or under a written warranty, implied warranty, or service contract.'"[24] It applies to full or limited warranties that a consumer receives in writing.[25] And it allows warrantors to provide an informal dispute-resolution process, subject to certain requirements, to settle consumer disputes as a prerequisite to a civil action for breach of the warranty in either state or federal court.[26]

**B. The Magnuson-Moss Warranty Act Does Not Prohibit the Enforcement of Sheinfeld's Binding Arbitration Agreement.**

Sheinfeld contends that all of his claims fall under the MMWA because he is a consumer who leased a consumer product subject to a warranty during the warranty period.[27] He notes that the MMWA establishes its own process for claim resolution: informal dispute-resolution followed by litigation, if that informal step is unsuccessful.[28] Because of that system, Sheinfeld maintains that claims covered by the MMWA are not arbitrable.

Defendants argue that, because Sheinfeld's MMWA claim hinges on the same facts as his state-law claims, they must all be arbitrated.[29] To make this argument, they rely on a pair of cases: *Clemens v. DaimlerChrysler Corporation* and *In re Apple iPhone 3G Products Liability*

---

[23] 15 U.S.C.§ 2302(a).

[24] *In re Apple iPhone 3G Prod. Liab. Litig.*, 859 F. Supp. 2d 1084, 1089–90 (N.D. Cal. 2012) (quoting *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004)).

[25] 15 U.S.C. § 2303(a).

[26] *Id*. at § 2310(a), (d).

[27] *See e.g.*, ECF No. 8 at 4–9.

[28] *Id*. at 11.

[29] ECF No. 11 at 3.

5

*Litigation*. But neither case justifies this proposition. In *Clemens*, the Ninth Circuit considered a class action alleging state-law breach-of-warranty claims and a claim under the MMWA for defective parts in Dodge Neon vehicles.[30] The panel agreed with the district court that the MMWA claim should be dismissed because it "hinge[d] on the state law warranty claims" and the plaintiff had failed to adequately plead or timely assert the state-law claims.[31] It explained in a footnote that the MMWA claim was dependent on the state-law claims because the plaintiff had "allege[d] a violation of the [MMWA] only insofar as DaimlerChrysler may have breached its warranties under state law; there [was] no allegation that DaimlerChrysler otherwise failed to comply with the MMWA."[32] The *Clemens* court borrowed that proposition from another auto-breach-of-warranty case from the Seventh Circuit, *Schimmer v. Jaguar*.[33] But *Schimmer* concerned whether a defendant could establish subject-matter jurisdiction for removal purposes under the MMWA's $50,000 amount-in-controversy requirement[34] by showing that the plaintiff's state-law claim met that amount.[35] Thus, neither *Clemens* nor *Schimmer* even broached the question of whether an MMWA claim that relies on the same facts as a state-law claim must be arbitrated with the state-law claim.

---

[30] *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1021 (9th Cir. 2008).

[31] *Id*. at 1021 n. 3.

[32] *Id*. (citing *Schimmer*, 384 F.3d at 405).

[33] *Schimmer*, 384 F.3d at 405.

[34] *See* 15 U.S.C. § 2310(d)(3)(B).

[35] *Schimmer*, 384 F.3d at 404–06 ("When the plaintiff relies on state law causes of action to bring a claim under the Magnuson–Moss [Warranty] Act, the $50,000 amount in controversy still must be met. In such a case, we then look to state law to determine the remedies available, which in turn informs the potential amount in controversy." (internal citation omitted)).

6

The district court in *In re Apple iPhone 3G Products Liability Litigation* did find that the plaintiffs' MMWA claim had to be arbitrated with their state-law warranty claims.[36] But the *In re Apple* court baldly relied on *Clemens* and *Schimmer* for that proposition. And it merely assumed, with no discussion of the FAA or its relationship to the MMWA, that "[b]ecause [p]laintiffs may be compelled to arbitrate their state law warranty claims, it follows that [they] may also be compelled to arbitrate their MMWA claim."[37] Thus, caselaw in this circuit offers no meaningful analysis of this issue.[38]

With no controlling authority, I look to the United States Supreme Court for structural guidance. In *Shearson/American Express Inc. v. McMahon*, the Court considered the analogous question of whether Congress intended to create an exception to the FAA for a pre-dispute arbitration agreement between a broker and a customer where the customer alleged that the broker violated the Securities Exchange Act.[39] The *McMahon* Court established a three-part test for determining whether Congress "intend[ed] to limit or prohibit waiver of a judicial forum for a particular claim . . . ."[40] The court must consider (1) the statute's text; (2) its legislative history; and (3) whether there is an "inherent conflict between arbitration and the statute's underlying purposes."[41] *McMahon* cautions that "[t]he burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights

---

[36] *In re Apple*, 859 F. Supp.2d at 1089–90.

[37] *Id*. at 1091.

[38] Although the Ninth Circuit addressed this issue in a 2011 case, it withdrew that opinion the following year. *See Kolev v. Euromotors W./The Auto Gallery*, 658 F.3d 1024, 1032 (9th Cir. 2011), *opinion withdrawn*, 676 F.3d 867 (9th Cir. 2012).

[39] *McMahon*, 482 U.S. at 222–24.

[40] *Id*. at 227.

[41] *Id*.

7

at issue,"[42] and absent a clear showing to the contrary, courts must "rigorously enforce agreements to arbitrate."[43]

Applying these principles, the *McMahon* court held that the customer's claims were arbitrable under the FAA because it was not clear that, by providing a judicial forum for resolution of claims arising under the Securities Exchange Act, Congress intended to prohibit a party from waiving its rights under the act.[44] The High Court found that the fact that Congress did not address arbitrability of claims under the act was not evidence of its intent to preclude arbitration of such claims.[45] And it rejected a hostile view towards arbitration when there is no evidence to show that arbitration would not adequately vindicate the consumers' rights under the act.[46]

The Fifth Circuit applied the *McMahon* test to hold in *Walton v. Rose Mobile Homes*[47] that the MMWA does not preclude binding arbitration under the FAA. When the Waltons sued their mobile-home manufacturer and dealer, asserting state-law claims and an MMWA claim similar to Sheinfeld's, the defendants moved to compel arbitration under the binding arbitration provisions in the manufacturer's warranty and the Waltons' contracts.[48] Like Sheinfeld, the Waltons argued that the MMWA precluded binding arbitration of any of their claims.[49]

---

[42] *Id*.
[43] *Id*. at 226 (internal quotation marks omitted).
[44] *Id*. at 234.
[45] *Id*. at 236–38.
[46] *Id*. at 238.
[47] *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470 (5th Cir. 2002).
[48] *Id*. at 471–72.
[49] *Id*. at 472.

The district court found that the Waltons were partially right and compelled arbitration of their non-MMWA claims only.[50] The Fifth Circuit reversed, holding that the Waltons were "bound to arbitrate" all of their claims.[51] It carefully walked through the FAA and the MMWA, their history, and their application. The Court noted that Congress, through the FAA, established a "federal policy favoring arbitration" and a "presumption of enforceability" for arbitration agreements,[52] so, to answer the *Walton* question, it had to "determine if Congress expressed any contrary intent with respect to such claims arising under the MMWA."[53]

Through extensive analysis, the *Walton* Court found no congressional intent to preclude binding arbitration of claims in the MMWA's text, legislative history, or purpose.[54] So it held that "[t]he clear congressional intent in favor of enforcing valid arbitration agreements controls in this case," and that "the MMWA does not preclude binding arbitration of claims pursuant to a valid binding arbitration agreement, which the courts must enforce [under] the FAA."[55] In doing so, the court rejected contrary holdings from other courts. It reasoned that "[s]ome of those cases" relied on the Federal Trade Commission's (FTC's) interpretation of the MMWA that binding arbitration is impermissible under the MMWA,[56] but "it is improper to use the FTC regulations themselves to determine congressional intent here" because "[a]n agency's

---

[50] *Id*. at 472–73.
[51] *Id*. at 479.
[52] *Id*. at 473 (citing *McMahon*, 482 U.S. at 226 (internal quotation marks omitted)).
[53] *Id*. at 475.
[54] *Id*. at 475–78.
[55] *Id*. at 478–79.
[56] *Id*. at 475, 479.

regulations . . . are not part of" the *McMahon* test.[57] They may only be considered if, after working through the *McMahon* test, congressional intent remains ambiguous.[58]

I find *Walton* persuasive and adopt its reasoning and conclusions. In doing so, I reject Sheinfeld's argument that this court should defer to the FTC's interpretation of the MMWA as preclusive of binding arbitration. Like the *Walton* Court, I find that the FTC's regulatory interpretations of the MMWA as a binding arbitration bar do not factor into the *McMahon* analysis, so I need not consider them.[59] I also reject Sheinfeld's contention that proper application of the *McMahon* test compels the conclusion that Congress intended through the MMWA to preclude binding arbitration of warranty claims.[60] At bottom, Sheinfeld's position hinges on the notion that the arbitral forum is not "a sufficient, or even desirable, avenue for dispute resolution of claims under the" MMWA[61] or is somehow "not in line with the spirit of

---

[57] *Id*. at 479.

[58] *Id*.

[59] Even if I were to consider the FTC's interpretation, I would disregard it as unreasonable. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984) (laying out the two-part test for determining whether an administrative agency's interpretation of a statute is entitled to deference and noting that the interpretation must be reasonable). As the Eleventh Circuit held in *Davis v. Southern Energy Homes, Inc*., 305 F.3d 1268, 1279 (2002), the FTC's interpretation of the MMWA as preclusive of binding arbitration is unreasonable because "the FTC's motive behind the legislative regulation is contradictory to Supreme Court rationale [favoring arbitration]." I find the *Davis* Court's analysis of this issue persuasive, and I would adopt it and decline to defer to the FTC's MMWA regulations regarding binding arbitration in written warranties.

[60] ECF No. 8 at 15.

[61] *Id*.

the act."⁶² But, as the United States Supreme Court has consistently acknowledged, hostility toward binding arbitration is outdated.⁶³

So, for the reasons articulated by the *Walton* Court, I find that the MMWA does not preclude binding arbitration of claims under a binding arbitration agreement that must be enforced under the FAA. Sheinfeld is bound to arbitrate his claims under the lease's binding-arbitration provision.

**C.     There are no specific arbitration provisions in BMW's warranty that apply to Sheinfeld and override the general arbitration provisions in the lease agreement.**

Sheinfeld does not otherwise challenge the arbitrability of his claims under the arbitration clause in the lease agreement. Nor does he challenge the enforceability of the lease, based on fraud, unconscionability or another defense.⁶⁴ Instead, he argues that BMW's warranty contains a specific arbitration provision that should control over the more general arbitration provisions contained in the lease agreement.⁶⁵ He relies on the "standard rule of contract interpretation . . . that when provisions are inconsistent, specific terms control over general ones." ⁶⁶ But a close reading of the warranty provision on which he relies shows that it does not apply to him.

---

⁶² *Id.*

⁶³ *See, e.g.*, *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989); *McMahon*, 482 U.S. at 220; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985).

⁶⁴ *See, e.g.*, ECF No. 8 (Sheinfeld's opposition); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (providing that the FAA's savings clause allows courts to invalidate arbitration agreements using contract defenses such as fraud, duress, or unconscionability).

⁶⁵ ECF No. 8 at 20; *see also* ECF No.4-2 at 5 (BMW Financial Services and BMW of North America's arbitration clause); ECF No. 5-2 at 2 (BMW of Las Vegas's arbitration clause).

⁶⁶ *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 891 (9th Cir. 2003); *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003).

BMW's limited warranty states that it may be required in some states to repair, replace, or reimburse the consumer if it is unable to fix a problem with the vehicle that arises in the first 12 months or 12,000 miles of the purchase.[67] The warranty establishes a process by which consumers can contact BMW's customer-assistance program for help in repairing the defect.[68] It then provides recourse under New Jersey's lemon law for its residents, and mediation *or arbitration* through BBB Auto Line, its free, informal dispute-resolution program.[69] But neither of these programs is available in Nevada, so they do not apply to Sheinfeld.[70] His only pre-litigation recourse under the warranty appears to be through the customer-assistance program. Thus, the warranty is not inconsistent with the lease agreement's arbitration clause. And contrary to Sheinfeld's assertion,[71] the court can easily harmonize these provisions while giving full effect to the arbitration clause.

## Conclusion

Because all of Sheinfeld's claims are arbitrable under the lease agreement and the MMWA does not preclude binding arbitration of these claims under the FAA, IT IS HEREBY ORDERED that the **defendants' motions to compel arbitration and stay this case [ECF Nos. 4, 5] are GRANTED.** Sheinfeld must arbitrate all of his claims under the terms of the arbitration provision contained in his lease agreement. IT IS FURTHER ORDERED that **this case is STAYED** pending the conclusion of that arbitration.

Dated: September 24, 2019

U.S. District Judge Jennifer A. Dorsey

---

[67] ECF No. 8-2 at 38 (BMW's New Vehicle Limited Warranty).
[68] *Id*.
[69] *Id*. at 39–40.
[70] *See, e.g., id*.
[71] ECF No. 4-2 at 3.